## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Allen L. Pyron; Raymond L. Semler; Joe Bellanger; Thomas Bolter; and all others similarly situated, | File No. 24-CV-04051 (JMB/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| Nancy Johnston, *CEO, Minnesota Sex Offender Program*; Terry Kneisel, *Facility Director—MSOP Moose Lake*; Sue Johnson, *Special Services Program Manager—MSOP Moose Lake*; Kevin Moser, *Former MSOP— Moose Lake Facility Director*; Dale Stevens, *Acquisition Management Specialist/Buyer (AMS)*; and JPay, LLC, | |
| Defendants. | |

---

Allen L. Pyron, Raymond L. Semler, Joe Bellanger, and Thomas Bolter, Moose Lake, MN, self-represented.

Aaron Winter, Office of the Minnesota Attorney General, St. Paul, MN, for Defendants Nancy Johnston, Terry Kneisel, Sue Johnson, Kevin Moser, and Dale Stevens, in their official capacities.

João C.J.G. De Medeiros, Office of the Minnesota Attorney General, St. Paul, MN, for Defendants Nancy Johnston, Terry Kneisel, Sue Johnson, Kevin Moser, and Dale Stevens, in their individual and official capacities.

Mack H. Reed and Delaney L. Nelson, Lewis Brisbois Bisgaard & Smith LLP, Minneapolis, MN, for Defendant JPay LLC.

---

This matter is before the Court on Defendants Nancy Johnston's, Terry Kneisel's,

Sue Johnson's, Kevin Moser's, Dale Stevens's (together, the State Defendants), and JPay

LLC's (together, with the State Defendants, Defendants) motions to dismiss Plaintiffs Allen L. Pyron's, Raymond L. Semler's, Joe Bellanger's, and Thomas Bolter's (together, Plaintiffs) Complaint. (Doc. No. 57, 74.) Plaintiffs have also moved for a temporary restraining order (TRO). (Doc. Nos. 24, 26.) For the reasons explained below, the Court grants the Defendants' motions to dismiss and denies the TRO.

## BACKGROUND

### A.    The Parties

The Minnesota Sex Offender Program (MSOP) provides sex-offender treatment to individuals who have been civilly committed as sexual psychopathic personalities or as sexually dangerous persons. Minn. Stat. § 253D.02, subds. 13–16. The MSOP is operated by the Minnesota Department of Human Services (DHS), which is an agency of the State of Minnesota.[1] *See* Minn. Stat. §§ 15.01, 246B.02. Johnston is the Chief Executive Officer of the MSOP. (Doc. No. 1 [hereinafter, "Compl."] ¶ 7.) The remaining State Defendants are either current or former employees of the MSOP or the State. (*Id.*)

Plaintiffs are four civilly committed individuals who are receiving sex-offender treatment through the MSOP at its facility in Moose Lake, Minnesota.[2] (*Id.* ¶ 6.)

---

[1] As of July 1, 2025, MSOP has been transferred from DHS's oversight to that of a new agency known as "Direct Care and Treatment." Minn. Stat. § 246C.04, subd. 2 (2024).

[2] Pyron was committed to the MSOP in 2007; Semler was committed in 2006; Bolter was committed in 2010, but spent a period from 2017–2023 in a Department of Corrections facility; and Bellanger was committed in 2023. *See In re Bellanger*, No. A24-0610, 2024 WL 4025538 (Minn. App. Sept. 3, 2024); *In re Bolter*, No. A10-1947, 2011 WL 1642637, at *2 (Minn. App. May 3, 20110; *In re Semler*, No. A06-2213, 2007 WL 969081 (Minn. App. Apr. 3, 2007); *In re Pyron*, No. A08-0638, 2008 WL 4007433, at 82 (Minn. App.

JPay is a private company with a principal place of business in Florida.  (*Id.* ¶ 7(f).)
Broadly, JPay provides institutions with systems through which incarcerated or committed
individuals can purchase secure devices (referred to by the parties as "MP3 players") that
are capable of various pay-to-play entertainment and communication functions, such as
email service; downloading and playing music files; and downloading and displaying
educational content, e-books, and movies.  (*Id.* ¶ 9.)

### B.    Plaintiffs Use JPay's Devices and Services While in the MSOP

Plaintiffs allege that, in June 2014, DHS, via the State Defendants, entered into a
four-year contract with JPay to provide services for clients[3] of the MSOP program
(Contract).[4]  (*Id.* ¶ 9 & n.2; Doc. No. 64-1.)  The Contract was later renewed through some
time in 2020.  (Compl. ¶ 9 n.2.)  The Contract provided for or could have provided for

---

Sept. 2, 2008); *State v. Bolter*, No. 09-CR-17-1200, Doc. No. 1 ¶ 32 & n.6 (Minn. Dist. Ct.
Nov. 8, 2017).

[3] Both the Plaintiffs and the State Defendants refer to individuals who are civilly committed
to the MSOP program as "clients."  (*See generally* Compl.; Doc. No. 59.)  For that reason,
the Court will adopt this practice in this Order.

[4] In support of its motion to dismiss, the State Defendants ask the Court to consider the
terms of the Contract.  (Doc. No. 64-1.)  In general, "matters outside the pleading may not
be considered in deciding a Rule 12 motion to dismiss"; however, "documents necessarily
embraced by the complaint" are not matters outside of the pleadings.  *Enervations, Inc. v.
Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).  Materials that are
"embraced by the complaint" are those "whose contents are alleged in a complaint and
whose authenticity no party questions, but which are not physically attached to the
pleadings."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  Plaintiffs
reference the contents of the Contract, including its terms, throughout the Complaint but
did not directly quote from it or append it as an exhibit.  (*See* Compl.)  The Court considers
the Contract because it is embraced by the pleadings.

JPay's full panoply of capabilities and services. (*See id.* ¶ 25.) Nevertheless, Plaintiffs allege that, because of various MSOP policies and decisions made by MSOP employees, MSOP clients are not permitted access to all of JPay's capabilities; for example, they cannot engage in two-way email communications (instead, their devices could only *receive* email from users who have been invited to create JPay accounts), or download certain content like educational materials and games. (*Id.* ¶ 10.) Meanwhile, according to the allegations in the Complaint, individuals incarcerated in Minnesota Department of Corrections (DOC)[5] facilities are provided with JPay devices with all capabilities enabled, including two-way email service. (*Id.* ¶ 10.)

Further, Plaintiffs allege that, due to MSOP policies, clients are not permitted to purchase JPay's most recent version of MP3 player because those devices operate with lithium batteries, which allegedly run afoul of MSOP policy. (*Id.* ¶ 26.) As a result, MSOP clients are forced to use older versions of the devices. (*Id.*) As a result, when their older-model devices malfunction or wear out, MSOP clients have no option to purchase a new MP3 player or retrieve funds they have invested into their now-unusable players. (*Id.*) For example, Pyron and Selmer "have approximately $6,000 invested into their players," which becomes inaccessible to them "when their players go out." (*Id.*)

Plaintiffs also allege that, when inmates finish a custodial sentence at the DOC and are brought into MSOP (like Bellanger and Bolter were), they are not permitted to keep the

---

[5] The DOC is an agency of the State of Minnesota. Minn. Stat. chs. 241–44. At no relevant time has the DOC been under the oversight of DHS. *See* Minn. Stat. chs. 245–67.

JPay player they lawfully purchased while in DOC custody.  (*Id.* ¶¶ 27, 31, 32.)  Instead, such individuals are forced to send their old DOC-approved JPay device—including all purchased content that resides on the device—out of the MSOP facility and to purchase a new MSOP-compliant device and new content.  (*Id.* ¶ 27.)  Bolter asked JPay to refund him for content he purchased for his DOC device; JPay informed him that it does not issue refunds.  (*Id.* ¶ 32.)

Plaintiffs further allege that some material available to them via JPay has been censored.  They provide the following example: MSOP clients may purchase a twenty-three-song Taylor Swift album through JPay.  (*Id.* ¶ 28.)  However, upon purchase, only twenty of the twenty-three songs are available; three have been "censored" in such a way that the entirety of those songs are unavailable.  (*Id.*)  Plaintiffs allege that, despite the censorship via JPay, "Plaintiffs are allowed to go to Wal-Mart and purchase the same CD album with no problem."  (*Id.*)

Plaintiffs allege that, on multiple occasions, they and other MSOP clients have brought their concerns to the attention of several MSOP officials, including Johnson, Kneisel, and Moser.  (*Id.* ¶¶ 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 29.)  Their concerns have gone unaddressed.  (*See id.*)

### C.    This Action

In October 2024, the four self-represented Plaintiffs initiated this action.  (*See* Compl.)  In their verified Complaint, Plaintiffs allege that, by restricting MSOP clients' access to JPay players and content—i.e., by not permitting two-way emailing, by disallowing purchase of JPay's most recent version of the MP3 player device that uses

lithium batteries, by not permitting clients who have come from DOC facilities to use the MP3 player they acquired while at the DOC, and by not being able to purchase certain uncensored music through JPay—Defendants have violated several of Plaintiffs' constitutional rights. Specifically, Plaintiffs assert that Defendants have violated the following constitutional rights: their right to Equal Protection, substantive due process, and procedural due process under the Fourteenth Amendment; the right to freedom of association and speech under the First Amendment; and the right to substantive due process rights under the Fifth Amendment. Plaintiffs seek monetary damages and injunctive relief in the form of access to JPay players that have the same capabilities as those used by inmates at DOC facilities (i.e., capable of two-way email, downloading educational materials, playing uncensored music). (*Id.* at 25–26.) Plaintiffs bring their claims against the State Defendants in both their individual and official capacities.

Plaintiffs have also filed a motion for a temporary restraining order to enjoin the Defendants from removing JPay kiosks from their MSOP facility. (Doc. Nos. 24, 26.)

## DISCUSSION

The State Defendants and JPay both move to dismiss all of Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

6

alleged." *Iqbal*, 556 U.S. at 678. In this analysis, courts construe the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, courts will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). That said, a complaint "must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002). All told, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Pleadings filed by self-represented parties, "however inartfully pleaded," are to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the Court will not act as an "advocate for the pro se litigant" or "rewrite a [complaint] to include claims that were never presented." *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), *cited with approval in Palmer v. Clarke*, 408 F.3d 423, 444 n.15 (8th Cir. 2005).

Under these standards, and for the reasons discussed below, the Court grants Defendants' motions.

## I.    THE STATE DEFENDANTS' MOTION TO DISMISS

The State Defendants raise numerous arguments in support of their motion to dismiss. As discussed below, the Court concludes that the Eleventh Amendment bars

Plaintiffs' official-capacity claims to the extent Plaintiffs seek monetary damages; Plaintiffs' individual-capacity claims are insufficiently pleaded because Plaintiffs do not allege facts that implicate the individual State Defendants in any alleged unconstitutional conduct; and, to the extent any claims survive, Plaintiffs fail to plausibly plead facts that support any of their alleged constitutional violations.[6]

### A. Eleventh Amendment

Plaintiffs sue the State Defendants in both their individual and official capacities and seek an award of monetary damages against them. (*See* Compl.) The Eleventh Amendment to the U.S. Constitution grants the states with immunity from suits brought in federal court by its own citizens. U.S. Const. amend. XI; *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999). A suit that is brought against a government official in his or her official capacity is considered a suit against the entity of which the official is an agent. *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007), *abrogated on other grounds by S.A.A. v. Geisler*, 127 F.4th 1133 (8th Cir. 2025). Of course, a state may waive its Eleventh Amendment immunity, *Alsbrook*, 184 F.3d at 1005, but the State of Minnesota has not done so and has not consented to suit in this case.

Further, all claims against the State Defendants are brought under 42 U.S.C. § 1983. (*See* Compl.) The law is clear that the Eleventh Amendment bars an award of monetary damages against a state official acting in their official capacity. *E.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1998); *Larson v. Kempker*, 414 F.3d 936 (8th Cir.

---

[6] Because of this conclusion, the Court need not and will not address the State Defendants' other urged grounds for dismissal.

2005).  However, a plaintiff may seek injunctive or prospective relief from a government official.  *Grand River Enters. Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701–02 (8th Cir. 2006).  Therefore, the Court dismisses all claims against the State Defendants in their official capacities to the extent that Plaintiffs seek an award of monetary damages.  The Eleventh Amendment does not bar any request for monetary damages against the State Defendants in their individual capacities.

### B.    State Defendants' Personal Involvement in the Alleged Unconstitutional Conduct

The State Defendants further argue that all individual-capacity claims should be dismissed because Plaintiffs do not sufficiently allege their personal involvement in the complained-of conduct so as to give rise to personal liability.  The Court agrees.

Section 1983 claims do not permit the imposition of the theory of vicarious liability. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  Rather, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quotation omitted). For that reason, allegations relating to an officer's "general responsibility" for supervising portions of a facility's operations do not establish that such official had the necessary personal involvement to be liable under section 1983.  *E.g.*, *Ouzts*, 825 F.2d at 1277.

In their Complaint, Plaintiffs assert various claims against five MSOP officials. (*See* Compl.)  Starting with Johnston: Plaintiffs allege that Johnston is the CEO of the MSOP.  (*Id.* ¶ 7(b).)  Plaintiffs allege that Johnston signed a policy into effect in June 2018,

9

which provided that MSOP clients were responsible for notifying their friends and family about MSOP's electronic communications policy. (*Id.* ¶ 10.) Plaintiffs do not allege that the June 2018 policy that Johnston signed constitutes a constitutional violation, and Plaintiffs do not otherwise tie Johnston specifically to any other bad act.

Plaintiffs allege that Johnson is a Special Services Program Manager at the MSOP, that Kneisel is the Facility Director at the MSOP facility in Moose Lake, and that Moser is a former Facility Director at the facility. (Compl. ¶ 7(c), (d), (f).) Plaintiffs allege only that Johnson, Kneisel, and Moser attended various meetings in November 2014, October 2018, and November 2018, during which MSOP clients made known their concerns about the limitations on their access to JPay services. (*Id.* ¶¶ 15, 24, 25.) They do not allege that Johnson, Kneisel, or Moser did anything during those meetings that amounted to unconstitutional conduct. (*See id.*) Further, although Plaintiffs allege that "[State] Defendants could have corrected the violations, but failed to take corrective action," which "continu[ed] the blatant Constitutional violations," they make no specific allegations about the conduct of Johnson, Kneisel, or Moser. For example, Plaintiffs make no allegations that Johnson, Kneisel, or Moser had an obligation or ability to take the "corrective action" Plaintiffs desire, but nonetheless flouted such obligation or failed to act within their capacity.

Plaintiffs allege that Stevens is employed by the Department of Administration as an Acquisition Management Specialist/Buyer. (Compl. ¶ 7(e).) Stevens appears to have signed the contract between JPay and the State in 2014. (*See* Doc. No. 64-1.) Plaintiffs allege that Stevens "is the one who places what MSOP clients have access to in the

contract." (Compl. ¶ 30.) They also allege that Stevens had knowledge that "the limited access and censorship is a violation of Plaintiffs constitutional rights, but continued the violations anyway." (*Id.*) At most, Plaintiffs allege that Stevens executed a contract on behalf of DHS; they do not allege that Stevens himself created the MSOP policies that govern or limit client access to JPay's services.

Thus, because none of the allegations in the Complaint implicate the individual State Defendants in the alleged unconstitutional conduct, the individual-capacity claims do not survive the rigors of Rule 12(b)(6) and will be dismissed.

### C. Plausibility of Constitutional Claims

The State Defendants next argue that the remaining official-capacity claims for injunctive relief fail because Plaintiffs do not allege any plausible constitutional violation. Again, the Court agrees.

#### i.    First Amendment

The U.S. Supreme Court has acknowledged that "there is a *de minimis* level of imposition with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979). In *Senty-Haugen*, 462 F.3d 876 (8th Cir. 2006), the Eighth Circuit characterized the MSOP's client's lack of access to "outside vendors and computer privileges" as "*de minimis* restrictions" that do not rise to a constitutional level. *Id.* at 886 n.7. The Court has also acknowledged that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78 (1987). Though individuals who are civilly committed as dangerous persons—such as individuals committed to the MSOP

program—are entitled to "more considerate treatment and conditions of confinement" than prisoners, their "liberty interests are considerably less than those held by members of free society." *Senty-Haugen*, 462 F.3d at 886 (analyzing constitutional claims of MSOP client). Further, a restriction will be deemed an unconstitutional infringement on a civilly committed person's liberty "if it amounts to punishment." *Judah v. Ovsak*, 550 F. Supp. 3d 687, 702 (D. Minn. June 26, 2021) (quotation omitted).

Thus, the Court uses the following factors to determine whether institutional policies rise to the level of a constitutional violation: (1) whether the MSOP policy at issue bears a rational relationship to legitimate institutional and therapeutic interests; (2) whether the MSOP client has alternative means of exercising the First Amendment right at issue; (3) whether and to what degree accommodation of the right would impact the institution, resources, staff, and other clients; and (4) whether simple and cost-effective alternatives exist that would meet MSOP's objectives. *See Ivey v. Mooney*, No. 05-CV-2666 (JRT/FLN), 2008 WL 4527792, at *5, 10 (D. Minn. Sept. 30, 2008).

Plaintiffs cite to no authority, and the Court is aware of none, supporting the proposition that the First Amendment's protections create a constitutional right for civil detainees to purchase electronic devices of their choosing. Instead, the caselaw appears to support the opposite proposition. *See Banks v. Jesson*, No. 11-CV-1706 (SRN/JSM), 2016 WL 3566207, at *9–10 (D. Minn. June 27, 2016) (concluding that MSOP's content-neutral ban on electronic gaming systems did not trigger the First Amendment and because plaintiff did not otherwise demonstrate that his speech rights were substantially abridged by not having access to the entertainment system of his choice); *Hayzlett v. Johnson*, No.

12

20-CV-0877 (JRT/HB), 2020 WL 8461551, at *3 (D. Minn. Sept. 28, 2020), *adopting report and recommendation*, 2021 WL 428963 (D. Minn. Feb. 8, 2021).  Further, courts in this District and Circuit have made clear that "MSOP's limitations on detainees' use of computers, email, and the internet do not raise constitutional concerns."  *Banks v. Jesson*, 2016 WL 3566207, at *10 (collecting cases).

Therefore, the Court dismisses all of Plaintiffs' claims that implicate MSOP's policy of not permitting two-way email and MSOP's policy of disallowing the use of using unapproved MP3 player devices[7] (e.g., those that clients may have purchased while in DOC custody and newer versions of MP3 players that feature lithium batteries) because they implicate no constitutional concern.  Further, Plaintiffs' own pleading demonstrates that MSOP maintained its restrictions on clients' JPay devices' services because features such as "[v]ideo visiting is problematic with this population as there are concerns with civilly committed sex offenders in a sex offender treatment program having access to many of the internet options offered through JPAY."  (*See* Compl. ¶ 24.)

As for Plaintiffs' allegations that they were unable to purchase a complete version of a Taylor Swift album via JPay, the Court observes that the censorship of certain songs appears to be content-based and, therefore, implicates First Amendment protections. However, Plaintiffs do not allege that this restriction on their First Amendment rights was substantial or that they had no alternative means to exercising the First Amendment right

---

[7] The Court observes that Plaintiffs do not allege that these policies are related to the *content* of any speech that may be made via the MP3 players; instead, the policies appear to be content-neutral.

at issue; after all, Plaintiffs allege that they are still able to acquire the full versions of the songs at issue, just not through JPay (for example, at Walmart).  (Compl. ¶ 28.)  Further, the Court has previously approved MSOP's limitation of sexually suggestive speech because such restrictions were reasonably related to legitimate therapeutic and security interests, which is constitutionally permissible. *Banks*, 2016 WL 3566207, at *8; *see also Daywitt v. Harpstead*, No. 21-CV-1848 (WMW/DTS), 2022 WL 2374133, at *5 (D. Minn. June 30, 2022) (concluding media prohibitions at MSOP is rationally related to the institution's "legitimate interest in reducing administrative burdens and costs" and to "MSOP's legitimate institutional and therapeutic interests").

Thus, the Court concludes that Plaintiffs have not plausibly alleged any violation of the First Amendment.

### ii.    *Due process*

Plaintiffs' due-process claims under the Fifth Amendment[8] must also be dismissed for the simple reason that the Fifth Amendment applies only to actions taken by the federal government.  *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009).  Here, Plaintiffs assert claims only against state defendants and a private company with which the state contracted.  (*See* Compl.)  Because Plaintiffs attribute no wrongful conduct to a federal actor, their claims under the Fifth Amendment must be dismissed.  *See, e.g.*, *Branson v. Piper*, 2017 WL 9249421, at *3 (D. Minn. May 3, 2017), *report and*

---

[8] In their Complaint, Plaintiffs allege a violation of their due-process rights, generally. However, in their brief in opposition to Defendants' motions to dismiss, Plaintiffs clarify that at least a portion of their due-process claims arise under the Fifth Amendment.

*recommendation adopted*, 2017 WL 2730027 (D. Minn. June 26, 2017) (dismissing MSOP client's claims under the Fifth Amendment where plaintiff's complaint implicated only state actors).

Additionally, Plaintiffs' procedural and substantive due-process claims under the Fourteenth Amendment must also be dismissed. To succeed on a claim of a violation of procedural due process, Plaintiffs must show, among other things, that their claim implicates a protected life, liberty, or property interest. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). There is no federal or state law that creates a property right for MSOP clients to possess certain electronics or personal property that can be purchased and placed on an MP3 player. *Semler v. Ludeman*, No. 09-CV-0732 (ADM/SRN), 2010 WL 145275, at *24 (D. Minn. Jan. 8, 2010). Further, only egregious official conduct can be deemed "arbitrary in the constitutional sense." *Cnty. of Sacramento*, 523 U.S. at 846. State officials violate substantive due process rights only when their conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento*, 523 U.S. at 846. Conduct that shocks the conscience is "so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Id.* at 847 (quotation omitted). Plaintiffs do not allege that they were subject to any such conduct.

Plaintiffs fail to allege any plausible claim that the State Defendants have violated any due-process right. Their due-process claims will be dismissed.

### iii.    *Equal Protection*

Under the Equal Protection Clause of the Fourteenth Amendment, states may not deny any person the equal protections of the law. *E.g.*, *New Doe Child #1 v. United States*,

901 F.3d 1015, 1027 (8th Cir. 2018).  The Equal Protection Clause requires that "similarly situated individuals be treated alike."  *Id.*  Therefore, to prevail on an Equal Protection claim, the plaintiff must show that the defendant treated them differently than similarly situated individuals.  *E.g.*, *Am. Fam. Ins. v. City of Minneapolis*, 836 F.3d 918,  921 (8th Cir. 2016).  In cases—as here—in which the plaintiff is not a member of a suspect class and their claim does not implicate a fundamental right, then claim is subject to rational basis review.  *Id.*

Here, Plaintiffs allege that they, as MSOP clients, are treated differently than individuals incarcerated in DOC facilities with respect to the features made available to them via JPay.  However, Plaintiffs do not allege that MSOP clients and DOC inmates are "similarly situated" for Equal Protection purposes.  (*See* Compl.)  Nor can they.  DOC facilities are correctional facilities that house individuals sentenced to serve custodial terms of imprisonment.  Meanwhile, the MSOP was created to securely house and treat sexual psychopathic personalities or sexually dangerous persons.  *See* Minn. Stat. § 246B.02.  The populations of DOC and MSOP facilities are not similar.[9]  Courts in this District even recognize that civilly committed individuals who are housed in different facilities than one

---

[9] Plaintiffs even allege that, when they raised concerns about disparate JPay services available to DOC inmates and MSOP clients, the State Defendants and other MSOP officials informed them that the reason for such differences, in essence, that DOC and MSOP are different.  For example, they allege that MSOP officials informed them that "MSOP and DOC are not the same as they operate under different governing bodies." (Compl. ¶ 17.)  They were also told that certain features are not available to MSOP clients because those features would be "problematic with this [MSOP] population as there are concerns with civilly committed sex offenders in a sex offender treatment program having access to many of the internet options offered through JPAY."  (*Id.* ¶¶ 24, 25.)

another are not similarly situated for Equal Protection purposes. *See, e.g.*, *Semler*, 2010 WL 145275, at *28 (adopting R&R and recommending dismissal of MSOP client's Equal Protection claim, which asserted that MSOP clients housed in different facilities are treated differently, on grounds that civilly committed sex offenders at different Minnesota facilities are not similarly situated). Thus, the Court cannot conclude that MSOP clients are similarly situated to DOC inmates for purposes of an Equal Protection analysis.

Further, even if MSOP clients and DOC inmates were deemed to be similarly situated (they are not), "disparate impact is not sufficient to show a constitutional violation" because the Equal Protection Clause "is not violated absent invidious or discriminatory purpose." *United States v. Farmer*, 73 F.3d 836, 841 (8th Cir. 1996). Plaintiffs do not allege that the State Defendants have treated the differently because of some invidious or discriminatory purpose. Rather, Plaintiffs simply allege that DOC inmates are permitted a greater range of functions via JPay than MSOP clients and that DOC officials have limited MSOP clients' JPay functions for reasons related to the penological interests implicated by civil commitment. (*See* Compl. ¶¶ 10, 13, 19, 24, 25.)

Thus, Plaintiffs have not plausibly alleged any constitutional violations by the State Defendants. These claims will be dismissed.

## II.    JPAY'S MOTION TO DISMISS

JPay argues, among other things,[10] that Plaintiffs' claims against it—all of which are brought under 42 U.S.C. § 1983—fail because JPay is not a state actor and its conduct

---

[10] Because of this conclusion, the Court need not address JPay's alternative arguments.

does not bring it within the purview of the narrow exception to the state-actor rule. The Court agrees.

Section 1983 provides an avenue by which citizens may seek relief for alleged violations of their federal constitutional rights. 42 U.S.C. § 1983. More specifically, the statute provides an avenue for state-actor liability for unconstitutional actions taken "under color of law." *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quotation omitted). Liability lies when the plaintiff establishes the following: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001).

JPay's motion to dismiss starts with a challenge to the second element—that it is not a state actor. It is well settled that "[o]nly state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). In the Complaint, Plaintiffs do not allege that JPay is a state actor (i.e., a government agency or other body). However, the analysis does not end there. There exists an exception to the state-actor rule; specifically, non-state-actor liability may arise when "[a] private party who willfully participates in joint activity with the State or its agents." *Youngblood*, 266 F.3d at 855. However, for a private actor to come within section 1983's ambit under this exception, the "conduct at issue [must be] fairly attributable to the state." *Montano v. Hedgepeth*, 120 F.3d 844, 848–49 (8th Cir. 1997). Private conduct is "fairly attributable to the state" when the following three factors are satisfied: "[1] the state has delegated a private party a power traditionally exclusively reserved to the state[;] [2] where a private

18

actor is a willful participant in joint activity with the State of its agents[;] and [3] where there is pervasive entwinement between the private entity and the state." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (internal quotations omitted). Only a "very few" functions meet this requirement, such as "running elections and operating a company town." *Manhattan Comm. Access Corp. v. Halleck*, 587 U.S. 802, 809–10 (2019) (quotation omitted). The U.S. Supreme Court has "decline[d] the invitation" to expand the state-actor doctrine to hold that "all businesses affected with the public interest are state actors in all their actions." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 455 (1974).

The types of functions that do *not* meet the state-actor requirement include the following: "running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity." *Id.* (collecting cases). The state-action analysis "lack[s] rigid simplicity," *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001), but, in essence, the Court asks whether the state exercised its coercive power or otherwise significantly encouraged the challenged activities such that the decisions of JPay can be viewed as the decision of the state itself. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The Court therefore considers all circumstances alleged about the relationship between JPay and the state.

In the Complaint, Plaintiffs allege that JPay entered into a contract with DHS to provide a means by which to purvey certain entertainment services to individuals receiving treatment through the MSOP. (Doc. No. 64-1; Compl. ¶ 9.) This alleged fact alone does not give rise to liability, as "it is not enough that an actor have a contract with the state."

19

*E.g.*, *Unity Healthcare, Inc. v. Cnty. of Hennepin*, No. 14-CV-0114 (JNE/JJK), 2014 WL 6775293, at *4 (D. Minn. Dec. 2, 2014.); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) ("That a private entity performs a function which serves the public does not make its acts state action.").  In *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the U.S. Supreme Court rejected the notion that a "private corporation[] whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government" are engaging in state action "by reason of their significant or even total engagement in performing public contracts." *Id.* at 840–41.  Parties that contract with the state may become state actors if additional facts show a strong nexus between the state and the challenged action—for example, if the private party acts at the state's behest or the private party personally carries out state's constitutional duties).  *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 54 (1988) (concluding that a physician under contract with the state to provide medical services to inmates at a state prison—the provision of which are the state's constitutional duty—acted under color of law); *Smith v. Insley's Inc.*, 499 F.3d 875, 880–81 (8th Cir. 2007) (concluding that towing company that towed vehicle at the specific request of law enforcement officer acted under color of state law).

In their opposition to JPay's motion to dismiss, Plaintiffs argue that JPay can be deemed a state actor because JPay "acted in concert" with the State Defendants in the following four ways: (1) allowing music to be censored, (2) depriving Plaintiffs of their MP3 players; (3) depriving Plaintiffs of certain services that inmates at DOC facilities are afforded; and (4) and otherwise depriving Plaintiffs of their due-process rights under the Fourteenth Amendment.  (Doc. No. 83 at 5–6.)  However, Plaintiffs allege in their pleading

only that the *MSOP* makes the censoring decisions and decisions about which device types are permissible in the facility. (Compl. ¶ 28; *see also id.* ¶ 19 (alleging that "JPAY implemented what MSOP Defendants wanted").) Though Plaintiffs allege that JPay engaged in censoring activities "in conjunction" with the State Defendants, this is nothing but a mere conclusion that is entirely devoid of supporting factual allegations about the nature of these supposedly joint activities. (*Id.*) JPay does not make decisions about which facility can access which devices. (Compl. ¶¶ 31, 32.)

Here, Plaintiffs allege only the following: that the State Defendants entered into a general services contract under Minn. Stat. § 16C.09 with JPay. (Compl. ¶ 9.) Plaintiffs consistently and expressly allege that the *State Defendants*, not JPay, "implemented, retained and carried out policies" that violated their rights. (Compl. ¶¶ 9, 10, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 28, 30.) Throughout the Complaint, Plaintiffs never allege that JPay acted under color of state law or that JPay directed the MSOP's allegedly restrictive and unconstitutional policies.

Thus, Plaintiffs have not sufficiently alleged that JPay is a state actor and therefore subject to liability under 42 U.S.C. § 1983. Because all of Plaintiffs' claims against JPay arise under 42 U.S.C. § 1983, the Court dismisses them all.

## III.    PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDERS

Plaintiffs also moved for a TRO in which they seek an order preventing Defendants from removing JPay kiosks from their MSOP facility. However, in light of the Court's conclusion that all claims against all Defendants will be dismissed, the Court further

21

concludes that Plaintiffs' motion for a temporary restraining order is moot and shall be denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT

IS HEREBY ORDERED THAT:

1. The State Defendants' and JPay's Motions to Dismiss (Doc. Nos. 57, 74) are GRANTED.

2. Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 24, 26) is DENIED as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 25, 2025                                    /s/ *Jeffrey M. Bryan*
                                                        Judge Jeffrey M. Bryan
                                                        United States District Court